UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [34]

Before the Court is Defendant's motion to dismiss [34]. For the reasons below, the motion is granted; Plaintiff's first and second causes of action are dismissed with prejudice, while Plaintiff's third and fourth causes of action are dismissed with leave to amend.

I.    **Factual and Procedural Background**

Plaintiff Lucine Trim[1] brought this putative class action against Defendant Reward Zone USA alleging four causes of action under the Telephone Consumer Protection Act ("TCPA"). Third Am. Compl. ¶¶ 65-80, ECF No. 33 ("TAC").

Plaintiff alleges that in 2020, she began receiving text messages from Defendant on her cell phone that contained "spam advertisements and/or promotional offers" that sought to "solicit [Defendant's] 'rewards' and other associated promotions." *Id.* ¶¶ 17-19. Plaintiff claims that Defendant used an "automatic telephone dialing system" and a "prerecorded or artificial voice" to contact her without her prior express consent and in doing so, violated the TCPA. *Id.* ¶¶ 20-42. Plaintiff also claims that her phone number was on the National Do-Not-Call Registry and that Defendant's messages to her constituted telephone solicitations that further violated the TCPA. *Id.* ¶¶ 43-48. Plaintiff seeks to represent two classes: one consisting of persons who received similar unsolicited text messages from

---

[1] As originally filed, Tracy Eggleston and Monica Abboud were also named as plaintiffs on behalf of the proposed class, however they were dropped from the Second Amended Complaint, ECF No. 19, thus Lucine Trim is the sole remaining plaintiff.

:
_____    _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

Defendant and the other consisting of such person who were registered on the Do-Not-Call Registry while receiving those messages. *Id.* ¶¶ 49-51.

After this case was originally filed in 2020, the complaint had been amended twice when this Court stayed the case pending a decision from the Supreme Court in a case that concerned which types of systems constituted an "automatic telephone dialing system" under the TCPA. ECF No. 26. The Supreme Court issued its opinion in that case, *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021), on April 1, 2021.

The Court then issued an order to show cause, noting that some of Plaintiff's claims might be barred under the Supreme Court's *Duguid* decision. ECF No. 28. Plaintiff responded, asserting that she believed she could re-plead her claims in a manner consistent with *Duguid*. ECF No. 29. The parties stipulated to filing a Third Amended Complaint ("TAC"). ECF No. 31.

Defendant now brings the instant motion to dismiss the TAC, claiming that, contrary to Plaintiff's assertion, *Duguid* still bars two of her claims, and that the other two claims fail because its messages did not constitute "telephone solicitations." Mot. to Dismiss 9-11, ECF No. 34 ("MTD").

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v.*

_____    :    _____

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

*United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III.   Application

Plaintiff brings four claims in her TAC: two of which assert that Defendant's messages used an "automatic telephone dialing system" or "an artificial or prerecorded voice" in violation of 47 U.S.C. § 227(b), and two of which allege that Defendant's messages constituted "telephone solicitations" to persons on the Do-Not-Call Registry in violation of § 227(c). The Court concludes that the § 227(b) claims fail as a matter of law and must be dismissed with prejudice and that the § 227(c) claims lack sufficient factual detail and must be dismissed with leave to amend.

#### A.  Section 227(b) Claims

The TCPA, codified at 47 U.S.C. § 227, imposes restrictions on the use of automated telephone equipment. As relevant here, the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a [] cellular telephone service [. . .]" *Id.* § 227(b)(1)(A)(iii).[2] Thus, there are two ways to violate this provision: using an "automatic telephone dialing system" (hereinafter 'autodialer') and using an "artificial or prerecorded voice." Plaintiff claims that Defendant's messages did both.

#### 1.  Use of an Autodialer

The TCPA defines an "automatic telephone dialing system" – or autodialer – as "equipment which has the capacity to store or produce telephone numbers to be called, *using a random or sequential number generator*; and to dial such numbers." *Id.* § 227(a)(1) (emphasis added).

---

[2] In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Ninth Circuit held that a text message is a "call" within § 227(b)(1)(A), applying *Chevron* deference and deferring to the FCC's interpretation of the term. *Id.* at 953-54.

_____ : _____

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

In *Duguid*, the Supreme Court clarified the impact of the phrase "using a random or sequential number generator" in this definition. There, the plaintiff sued Facebook, alleging that its security feature – which sent a text message to users when someone tried to log into their accounts from an unknown device – was an autodialer. *Duguid*, 141 S.Ct. at 1168. Users provided their phone number to opt-in to the feature, which would then store the number and send a text when triggered by an unknown login. *Id.*

In proceedings below, the Ninth Circuit had held that this feature constituted an autodialer because it had the capacity to (1) store phone numbers, and (2) dial them automatically, notwithstanding the fact that a number generator (whether random or sequential) was not used. *Id.* In essence, the Ninth Circuit's view was that the requirement of using a number generator only applied to producing the phone number – not to storing it. Thus, equipment which merely stored and automatically dialed phone numbers without any use of a number generator still met the definition of an autodialer.

The Supreme Court reversed, holding that the phrase "using a random or sequential number generator" modified *both* the words "store" and "produce." *Id.* at 1169-73. Accordingly, the Court held that to constitute an autodialer, a "necessary feature" was "the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at 1173.

The parties dispute the impact of *Duguid* on the instant case. In Defendant's view, *Duguid* squarely forecloses the § 227(b) claims. *See* MTD 10. In Plaintiff's view, *Duguid* clarified the definition of an autodialer, but its definition still covers the equipment Defendant used here. *See* Opp. MTD 16. The Court does not fully agree with either position but ultimately agrees with the great weight of post-*Duguid* authority that holds that equipment like Defendant's is not an autodialer.

Plaintiff alleges that Defendant obtained her phone number, along with a list of others, from a sales lead vendor called Deal Zingo. TAC ¶ 20. Plaintiff claims that Defendant then used a number generator in two ways: (1) to index the phone numbers obtained from Deal Zingo into a database, and (2) to select an indexed phone number to dial. *Id.* ¶¶ 25-28, 32-33. According to Plaintiff, this entails using a number generator to "store" and to then "produce" a number to be dialed, which is thus still an autodialer under *Duguid*. *See* Opp. MTD 16.

In Defendant's view, the fatal flaw in Plaintiff's claim is that she does not allege that Defendant

| | | : |
|---|---|---|
| | Initials of Preparer | |
| | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|----------|----------------------|------|------------------|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

uses a number generator to generate the phone numbers *themselves*. MTD 10. Defendant argues that *Duguid* "unequivocally stated it 'granted certiorari to resolve a conflict among the Court of Appeals regarding whether an autodialer must have the capacity to **generate** random or sequential phone numbers,'" and answered that question in the affirmative. Reply ISO MTD 5, ECF No. 39 (citing 141 S.Ct. at 1168) (emphasis added by Defendant).

*Duguid* clearly establishes that, to constitute an autodialer, the equipment must use a number generator in *some* way. 141 S.Ct. at 1173. However, in this Court's view, it does not conclusively resolve *how* that number generator must be used – whether it must be used to generate the phone number itself, or whether it may also be used for indexing and selecting phone numbers. Put differently, *Duguid* establishes that an autodialer must "use a random or sequential number generator to either store or produce phone numbers," but it did not specify what it means to "store or produce" the phone numbers. *See id.*

While *Duguid* did not resolve this question, many district court decisions since *Duguid* have. Most notably, in this District, *Austria v. Alorica, Inc.*, 2021 WL 5968404, *6 (C.D. Cal. Dec. 16, 2021) considered this issue and concluded that, to be an autodialer, the equipment must use a number generator to generate the phone numbers themselves.

*Austria* began by setting out the four possible interpretations of the statutory definition of an autodialer, using a categorization originally articulated by the Seventh Circuit's in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 464–67 (7th Cir. 2020):

(1) to store telephone numbers using a random or sequential number generator, or to produce telephone numbers using a random or sequential number generator;
(2) any storing or producing of telephone numbers to be called, provided that those telephone numbers were previously generated using a random or sequential number generator;
(3) to store, generally, telephone numbers to be called, or to produce telephone numbers using a random or sequential number generator;
(4) any storing or producing of telephone numbers to be called, provided that those telephone numbers are later dialed using a random or sequential number generator.

_____ : _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

2021 WL 5968404 at *2. As *Austia* noted, the Supreme Court's decision in *Duguid* clearly eliminated interpretation (3), however it did not further specify which of the remaining three was correct. *Id.* at *3.

Austria concluded that interpretation (2) was correct in light of the text and purpose of the TCPA, as well as caselaw from other districts. *Id.* at *4. *Austria* noted that interpretation (4) contrasted with the grammatical structure of the definition and that interpretation (1) could lead to absurd results in which a company could incur TCPA liability simply by storing a list of phone numbers in an excel spreadsheet (which arguably uses a sequential number-generating feature to identify cells of data). *Id.* at *5. By contrast, interpretation (2) is a better fit for the text, in which the "number generator" specified in the definition implicitly refers back to the term "telephone numbers," not some index number. *Tehrani v. Joie de Vivre Hospitality, Inc.*, 2021 WL 3886043, *4 (N.D. Cal. Aug. 31, 2021).

Further, *Austria* noted that interpretation (2) comports with one of the purposes of the TCPA as identified in *Duguid*: preventing the inconvenience and threats to public safety that could arise from the random generation of phone numbers. *Id.* at *4 (citing 141 S.Ct. at 1167). These concerns are not implicated by using a number generator simply to *select* which number to dial from a list of phone numbers derived from a legitimate source. *Id.*

And finally, *Austria* accords with numerous other courts to have considered the issue, particularly those in the Ninth Circuit, which have concluded that equipment is only an autodialer if it uses a number generator to generate the phone numbers themselves – not if the number generator is used merely to index the phone numbers or select phone numbers from that index. *Id.* at *6 (discussing *Hufnus v. DoNotPay, Inc.*, 2021 WL 2585488, *1 (N.D. Cal. June 24, 2021); *see also Tehrani*, 2021 WL 3886043 at *4-7 (collecting cases and concluding same); *Brickman v. Facebook, Inc.*, 2021 WL 4198512, *2-3 (N.D. Cal. Sept. 15, 2021) (same).

The Court agrees with the well-reasoned opinion in *Austria*, as well as these highly persuasive opinions from the Northern District. While *Duguid* did not directly address the issue, the text and purpose of the TCPA, as well as cases from around the Ninth Circuit, illustrate that, to be an autodialer under § 227(a)(1), the equipment must use a number generator to generate the phone numbers *themselves*. Plaintiff's claim, which concerns a program that merely uses a number generator to generate

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

and select index numbers, thus does not state a claim as a matter of law.

### 2.  Use of Artificial or Prerecorded Voice

Plaintiff also alleges that Defendant's text messages violated § 227(b) because they used an "artificial or prerecorded voice. The Court disagrees.

Neither the statute nor its implementing regulations provide a definition of what constitutes an "artificial or prerecorded voice." Plaintiff's argument relies on selective dictionary definitions for the words in this phrase, namely that "artificial" means "humanly contrived, often on a natural model;" "prerecorded" means "to set down in writing in advance of presentation or use;" and "voice" means "an instrument or medium of expression." Opp. MTD 17. Thus, in Plaintiff's view, Defendant's text messages constituted an "artificial or prerecorded voice."

Plaintiff's interpretation is simply beyond the bounds of common sense. For one, the primary definition of "voice" in Webster's dictionary is "sound produced by vertebrates by means of lungs, larynx, or syrinx; especially sound so produced by human beings." *Voice, Merriam-Webster's Online Dictionary*, accessed Jan. 27, 2022. "An instrument or medium of expression" is only the tertiary definition of "voice." *Id.* Webster's tertiary definition includes an example sentence: "the party became the *voice* of the workers," illustrating that this usage of "voice" has an almost metaphorical or symbolic connotation. *See id.*

Thus, Plaintiff's interpretation conflicts with a primary principle of statutory interpretation – that words in a statute should generally be given their most natural understanding unless circumstances suggest otherwise. *See Duguid*, 141 S.Ct. at 1169. The most natural, commonplace understanding of "voice" is the sound produced by one's vocal system. Indeed, it is not plausible that Congress intended the word "voice" in the TCPA to carry the tertiary, metaphorical meaning that Plaintiff suggests over this primary, natural meaning – especially since if Congress *had* intended to adopt Plaintiff's broad meaning, it could have easily chosen clearer, more literal terms to do so, such as "medium of expression" or "communication."

Tellingly, as Defendant points out, Plaintiff fails to point to even a single case interpreting

_____    :  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

"voice" in the TCPA in this strained way. *See* Opp. MTD 17-21. And Plaintiff's sweeping interpretation would lead to absurd results. Consider an ordinary individual who wants to invite ten guests to a party; she sends a text message to the first invitee, and then, to save time, copies that text and pastes it into messages to the other nine. Because the messages to the other nine were "prerecorded" (i.e., set down in writing ahead of time) and, in Plaintiff's interpretation, the messages constituted a "voice," this would fall within the statute's prohibition. It nearly goes without saying that Congress did not intend this sort of result in passing the TCPA to crack down on mass commercial solicitations that used automated telephonic technology.

Nor is Plaintiff's argument saved by her generic reference to the purposes of the TCPA as a "remedial statute intended to protect consumers." As the Supreme Court noted in *Duguid*, the fact that Congress was broadly concerned about intrusive telemarketing does not mean that it intended to define every word in the TCPA in the broadest way possible. 141 S.Ct. at 1172. Indeed, as illustrated by the absurd result discussed above, Plaintiff's interpretation would "take a chainsaw" to the nuanced problems meant to be addressed by the TCPA "when Congress meant to use a scalpel." *Id.* at 1171.

For all of these reasons, Plaintiff's interpretation of an "artificial or prerecorded voice" lacks support. Defendant's text messages were just that – *text* messages. Given the natural meaning of "voice" as the sound produced by one's vocal chords, Defendant's text messages do not constitute a "voice" under the TCPA.

Thus, since Defendant's text messages did not involve an "automatic telephone dialing system" or an "artificial or prerecorded voice," Plaintiff's claims under § 227(b) fail as a matter of law. Accordingly, Plaintiff's first and second causes of action are dismissed without leave to amend.

**B. Section 227(c) Claims**

Plaintiff's third and fourth causes of action assert claims to relief under § 227(c). This subsection provided for the creation of the National Do-Not-Call Registry and for rulemaking by the FCC to regulate the bounds of permissible telemarketing directed at those on the Registry. The implementing regulations prohibit the initiation of any "telephone solicitation" to consumers who have registered their phone numbers on the Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2), (e). The TCPA grants a private

_____   :  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01027-SVW-KS | | Date | January 28, 2022 |
|---|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | | |

right of action to any consumer who receives more than one call in violation of that regulation within a 12-month period. 47 U.S.C. § 227(c)(5).

Plaintiff alleges that she registered her cell phone number on the Do-Not-Call Registry and then received multiple impermissible texts from Defendant within a 12-month period. TAC ¶¶ 43-48. She seeks to represent a class of similarly situated individuals. *Id.* The key dispute between the parties at this stage is whether Defendant's messages constituted "telephone solicitations" in violation of the TCPA's implementing regulations. *See* MTD 11; Opp. MTD 21.

Title 47 U.S.C. § 227(a)(4) defines a "telephone solicitation" as:

the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

Plaintiff alleges that the text messages from Defendant were "spam advertisement and/or promotional messages" that "sought to solicit [Defendant's] 'rewards' and other associated promotions." TAC ¶¶ 18-19. Defendant contends that these allegations are conclusory and do not provide sufficient factual detail and that Plaintiff's claim is thus subject to dismissal. MTD 27.

In the Court's view, this is something of a close call. Plaintiff argues that her allegations are not "simply parroting the statute." Opp. MTD 21. While that may be true, the allegations don't go much further – referring to the messages as "spam advertisements and/or promotional messages" that solicited Defendant's "rewards" and "associated promotions" does little more than allege that they were "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" by other conclusory terms.

*Iqbal* makes clear that "a formulaic recitation of the elements of a cause of action will not do." 556 U.S. at 678. However, plaintiffs cannot so easily avoid *Iqbal*'s requirements by rearranging a few clauses and breaking out the thesaurus. Even if not 'parroting' the statute, a claim that relies on mere

|  | : |
|---|---|
| Initials of Preparer | |
|  | PMC |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-01027-SVW-KS | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Tracy Eggleston et al v. Reward Zone USA LLC, et al.* | | |

"labels and conclusions" is still insufficient; the allegations must include enough factual detail to raise a *plausible* claim to relief. *Id.*; *see also Twombly*, 550 U.S. at 570.

Here, Plaintiff simply relies on conclusory labels such as "advertisement" and "promotion" without any supporting factual detail. This falls short of Plaintiff's pleading burden to provide sufficient factual matter to state a plausible claim, particularly since rewards-related messages do not always constitute "telephone solicitations."[3]

Accordingly, Plaintiff's third and fourth claims are dismissed with leave to amend so that Plaintiff may add allegations regarding the specific content of the messages she received, which, according to Plaintiff, will show that they were "telephone solicitations" within the TCPA's definition. *See* Opp. MTD 10.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss [34] is GRANTED. Plaintiff's first and second causes of action are dismissed with prejudice. Plaintiff's third and fourth causes of action are dismissed without prejudice and with leave to amend. Plaintiff shall file an amended complaint within 14 days of this order.

**IT IS SO ORDERED.**

---

[3] Defendant points to *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, *3-5 (N.D. Cal. Nov. 24, 2015), where the court held that a text message providing information about how to sign up for a free customer rewards program was not "telemarketing" (which is defined essentially identically to "telephone solicitation" in 47 C.F.R. § 64.1200(f)). On the other hand, in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), the Ninth Circuit held that calls urging a customer to redeem his Best Buy "Reward Zone" points was effectively encouraging him to make a purchase at Best Buy, thus constituting "telemarketing" and "telephone solicitation." *Id.* at 917-18.

_____ : _____
Initials of Preparer

PMC